329 So.2d 847 (1976)
CAMELOT CITIZENS ASSOCIATION et al.
v.
Michael L. STEVENS.
No. 10592.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Rehearing Denied April 12, 1976.
Writ Refused June 11, 1976.
*848 Walton J. Barnes and George L. Clauer, III, Baton Rouge, for appellant.
E. Drew McKinnis, Baton Rouge, for appellee.
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge:
This is a devolutive appeal from a judgment dismissing the plaintiffs' suit for injunctive relief from alleged violations of building restrictions within the Camelot Subdivision in the Parish of East Baton Rouge, Louisiana.
The suit was brought by the Camelot Citizens Association, and fifteen property owners who are members of the Association, against the defendant, Michael L. Stevens, the owner of and builder upon Lot 30 in said subdivision, to require him to comply with the subdivision restrictions and to correct any violation thereof. The basis for the plaintiffs' complaint is that the defendant has built a residential building set back a distance of approximately 25 feet from the front property line in violation of the subdivision restrictions which provide that no building shall be located on any lot nearer to the front line than 30 feet.
The defendant opposed the granting of injunctive relief on the grounds that the official subdivision map (which controls in the case of a conflict between the official map and the building restrictions) designates a 25-foot minimum set-back, and that the defendant is in compliance with the building restrictions, that the building restrictions are ambiguous and should be interpreted favorably to the defendant, and that, if there has been a violation, the Association and its members have acquiesced in the violation.
The petition in this suit was filed on May 14, 1975, requesting that a preliminary injunction issue prohibiting the defendant, ". . . or anyone acting on his behalf or in his interest or as his successor, from the violation, in any manner, of the subdivision restrictions for Camelot Subdivision." The cause then came on promptly for a hearing on the rule nisi to have the defendant show cause why a preliminary injunction should not issue herein, prohibiting the defendant from further violation of the subject building restrictions. After a hearing, the trial court requested briefs on the question of law involved in the suit. Subsequently, the matter was re-opened for the receiving of additional evidence. Then the trial court rendered judgment recalling, vacating and setting aside the rule nisi and dismissing the plaintiffs' suit at their costs. It is from this judgment that the appeal has been taken.
The subject building restrictions are of record in the office of the clerk and recorder for the Parish of East Baton Rouge. In a like manner, the official subdivision map is on file. The notarial act by which the defendant purchased the subject lot contains a reference to the building restrictions in the following language:
"Purchaser is aware of the fact that there are restrictions affecting this property recorded in Conveyance Book 2271, Folio 8, as amended in Conveyance Book 2329, Folio 491, Official Records of the Parish of East Baton Rouge, Louisiana. This reference to these restrictions is not intended to, nor does it hereby, reimpose said restrictions already recorded, but merely calls them to the attention of purchaser."
*849 The particular restriction which is the subject of these proceedings is the front set-back requirement. The building restrictions in pertinent part read as follows:
"No buildings (and this includes carport and detached covered structures) shall be located on any lot nearer to the front lot line than Thirty (30) feet . . ."
The official subdivision map fixes the front set-back requirement at 25 feet. The building in question is at its nearest point 25.3 feet from the front lot line. The concrete foundation or slab on which the subject building is erected is 26.4 feet at its nearest point from the front line.
It cannot be questioned that the owners of property in a subdivision have the right to impose building restrictions on their land in order to further a general plan of development. See Yiannopoulos, Civil Law of Property, sec. 104, page 310 (1966); Smith, Building Restrictions in Louisiana, 21 La.L.Rev. 468 (1961); Taggart, "Equitable Restrictions" in Louisiana, 33 Tul.L.Rev. 822 (1959). To ascertain the effect to be given to such building restrictions, we must first decide whether such a restraint on the use and disposition of property should be classified as a servitude, a real obligation, a covenant running with the land, or some other classification. Professor Yiannopoulos holds the opinion, and we agree with him, that due to the unique nature of building restrictions, they should be classified as "sui generis real rights akin to predial servitudes," and they should be governed by the general rules applicable to predial servitudes, subject to any exceptions established by a special legislation or jurisprudence as to their creation, enforcement or termination. Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 La.L.Rev. 44, 63 (1969); also see Fitzwater v. Walker, 281 So.2d 790, 792 (La.App.3rd Cir.1973).
We can thus say that building restrictions, such as those in question, are valid and enforceable where inserted in deeds in pursuance of a general plan devised by the ancestor to maintain certain building standards; such restrictions inure to the benefit of all other grantees under a general plan of development and are real rights running with the land, which the grantees or their successors in title may enforce by injunction proceedings. See Salerno v. De Lucca, 211 La. 659, 30 So.2d 678, 679 (1947); Edwards v. Wiseman, 198 La. 382, 3 So.2d 661, 663 (1941); Herzberg v. Harrison, 102 So.2d 554, 555 (La.App.1st Cir.1958).
However, restrictive convenants are strictly construed against the grantor and liberally in favor of the grantee, all doubt being resolved in favor of the free and unrestricted use of property and against restricted use. See Melrose Civic Ass'n v. Universal Builders, Inc., 306 So.2d 905, 906 (La.App.1st Cir.1974), writ refused, 310 So.2d 638 (La.1974); Fuller v. Hill Properties, Inc., 259 So.2d 398, 400 (La.App.2nd Cir.1972).
In the instant case, the trial court held that there was no substantial violation of the building restrictions. In so holding, the trial judge said:
" . . . (T)here are many equitable considerations here. You have the fact that the defendant bought the lot with the understanding that it had a twenty-five foot set back line. You have the fact that the map showed a twenty-five foot set back line. You have the fact that the defendant had progressed to the point of substantial construction prior to the time that this suit was brought. You have the ambiguity and confusion within the subdivision restrictions which certainly warrants a revision of them to spell out what is meant without any reference to A-1 zoning. This has not been done and people that go out and buy lots under the attendant circumstances cannot help but be prejudiced when they go to that expense plus the expense of building *850 only to find out that they are in violation by three and a half or four feet. We have to weigh the equities of the builder against the welfare of the owners in the subdivision. This is just not a substantial case of violation and, certainly, the attendant circumstances and the intent of the developers is such that it would be unwarranted to force the defendant to tear down this particular house.
"For all of these reasons, the injunctive relief is denied and plaintiffs' suit is dismissed at plaintiffs' cost."
We have reviewed the evidence and the law in the instant case. We agree with the trial court that there has been no substantial violation of the building restrictions by the owner-builder of Lot 30 of Camelot Subdivision. Under the circumstances in this case, an encroachment over the minimum setback line of approximately five feet is minor and insignificant. There is no showing that this slight deviation will adversely affect the property values of other property in the subdivision.
We, therefore, hold that the set-back in the instant case, if it does constitute a technical violation of the building restrictions, is so minor and insignificant as not to justify the injunctive relief sought by the plaintiffs. See Fuller v. Hill Properties, Inc., supra, at 401. The principle involved here can be analogized to the one considered by the court in Guyton v. Yancey, 240 La. 794, 125 So.2d 365, 370 (1960), wherein the Supreme Court quoted with approval from the opinion of the Court of Appeal (115 So.2d 627) as follows:
"Such technical violations can in no wise, we think, add to or take from the objects and purposes of the general scheme of development and will, therefore, be disregarded as immaterial to the issue."
We conclude that the building restrictions of the Camelot Subdivision have not been violated in any material respect. Accordingly, we affirm the judgment of the trial court at the appellants' cost.
Affirmed.
PONDER, Judge (concurring in part and dissenting in part).
I concur in the result since I cannot agree that a 4.7 foot deviation from a building setback line is not a substantial violation. However, because of the discrepancy between the building setback line on the map with that in the written restrictions, I believe that only the lesser restrictive provision can be enforced.
It is my belief, too, that the lower court erred in dismissing plaintiff's suit since it was tried and submitted only on the question of issuance of a preliminary injunction. I would therefore remand the case for further proceedings.