SANDERS, Justice.
 

 Mrs. Audrey Gerde Bruce, Dick Bruce, Thomas M. Welch, and Mrs. Mable D. Hunter, lot owners in Ferndale Subdivision of Jefferson Parish, brought this injunction suit to restrain Simonson Investments, Inc. and other defendants from using Lots 6 and 7 of Square 9 as a parking area for automobiles in the operation of a shopping center. Plaintiffs alleged the defendants were violating building restrictions limiting the use of the lots to residential purposes. The defendants filed exceptions of vagueness, prematurity, misjoinder of parties defendant, no cause of action, no right of action, and the prescription of two years. The district court overruled the exceptions. After trial, the court granted an injunction.
 

 The defendants appealed. In the Court of Appeal, they filed an exception of prescription of five years under Article 3542 of the Louisiana Civil Code. The Court of Appeal rejected the plea of prescription and affirmed the District Court judgment. 197 So.2d 754. On application of defendants, we granted certiorari limited to the
 
 *898
 
 question of whether the five-year prescription of Civil Code Article 3542 applies in this case. See 250 La. 922, 199 So.2d 923.
 

 On December 1, 1954, by duly recorded authentic act, the owners of all property within Ferndale Subdivision imposed upon the lots in the subdivision certain “protective covenants.” The act provided that the covenants run with the land and bind all future owners of the lots, their heirs, executors, and assigns. It further provided that any property owner in the subdivision could institute any proceeding in law or equity to prevent a violation of the restrictions or to recover damages.
 

 Concerning the use of the lots, the act stipulated:
 

 “All lots of Ferndale Subdivision, as extended, shall be used for residential purposes only.”
 

 For modification of the restrictions, the act provided:
 

 “Any change in the above restrictions and covenants may be made only upon the affirmative vote in writing of the owners of a majority of the lots in Squares 9 through 18, both inclusive, above described, and then only after a written notice of a meeting to consider such changes shall have been given to all of the owners of said lots. This notice shall state the nature of the change, the time, date and place of the meeting. In voting each lot shall vote as one unit regardless of the number of owners thereof, provided, however, that no person shall vote as owner for more than ten lots at any one meeting.”
 

 On August 14, 1959, a petition
 
 [1]
 
 purporting to authorize the use of Lots 6 and 7, Square 9, as a parking area was filed in the Conveyance Records of Jefferson Parish. The document was signed by the owners of 64 of the 120 lots in the subdivision. The signatures are followed by the number and square of the lots owned. Jesse R. Jones signed for 11 lots. Fifteen lots were signed for in the following manner: Estate Fred Simonson, Mamie M. Simonson.
 

 Defendant Simonson Investments, Inc., now owns Lots 6 and 7 of Square 9; defendant Commercial Properties Develop - ment Corporation is lessee; and defendant National Food Stores of Louisiana, Inc., is Commercial’s sublessee.
 

 National Food Stores operates a “super-, market” for the retail sale of food products adjacent to Lots 6 and 7. In connection with its business, it paved Lots 6 and 7 and began using it as a parking area .for its customers.
 

 On April 5, 1965, shortly after the parking began but more than five years after
 
 *900
 
 the restriction amendment was recorded, four owners of nearby lots brought this action to enjoin use of the lots for parking. Plaintiff Thomas M. Welch acquired his lot before the recordation of the amendment. Mrs. Hunter and Mr. and Mrs. Bruce acquired their lots later.
 

 Under the limited writ, the sole question before the court is whether the liberative prescription of five years under Article 3542 of the Louisiana Civil Code bars this action. That Article provides:
 

 “The following actions are prescribed by five years: That for the nullity or rescission of contracts, testaments or other acts. * * * ”
 

 The defendants concede they held no meeting and gave no notice to the lot owners for the amendment as required by the original instrument creating the restrictions. Nonetheless, they contend the amendment was only a relative nullity and the action to annul it is barred by the prescription of five years under Article 3542.
 

 The plaintiffs first contend the plea of prescription came too late, having been filed in the Court of Appeal after submission of the case. Alternatively, they submit the plea is without merit since the purported amendment is an absolute nullity and, in any event, cannot divest the plaintiffs of their rights.
 

 Since it appears that the Court of Appeal during oral argument granted defendants permission to file the prescriptive plea, we shall assume the plea was timely filed.
 

 The owners of property in a subdivision may impose restrictions on the use of the land to further a general plan of development. Holloway v. Ransome, 216 La. 317, 43 So.2d 673; Salerno v. DeLucca, 211 La. 659, 30 So.2d 678; Ouachita Home Site Sr Realty Co. v. Collie, 189 La. 521, 179 So. 841.
 

 Such building restrictions are a species of predial servitude. LSA-C.C. Arts. 709, 728. See McGuffy v. Weil, 240 La. 758, 125 So.2d 154; Holloway v. Ransome, supra; Ouachita Home Site & Realty Co. v. Collie, supra; Goodwin v. Alexander, 105 La. 658, 30 So. 102; and Yiannopoulos, Civil Law of Property, § 104, pp. 305-311 (1966).
 

 The release of such a servitude is a real alienation. LSA-C.C. Art. 817. Normally, therefore, all owners of lots to which the servitude is due must give consent to achieve a full discharge of the servitude. LSA-C.C. Arts. 816-818. Compare LSA-R.S. 9:5622, subpar. B. The Act creating the servitude may, however, provide a different method of discharge or modification. The Act in the present case provided such a method. It required the affirmative vote in writing of the owners of a majority of the lots, after notice to all lot owners and a meeting. Such a provision is valid. LSA-C.C. Arts. 709, 821.
 

 
 *902
 
 The contested release reflects no compliance with the notice and meeting requirements of the basic contract. The defendants concede a failure to comply with these requirements. The petition purporting to free the lots of the residential restriction was circulated from person to person for signatures. Neither the plantiffs nor their ancestors in title signed the petition. The petition was never presented to plaintiff Welch.
 

 The petition shows on its face that it makes no release of the servitude due to plaintiffs’ lots. The real rights of the plaintiffs can be released only in the manner provided in the basic contract or with their consent. See LSA-C.C. Art. 1779.
 

 Since the purported contract lacks the consent of plaintiffs or their ancestors in title, it must be considered as non-existent or as void on its face. Hence, the five-year prescription of Article 3542 does not apply. Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., 143 La. 743, 79 So. 324 (on rehearing); 21 Tul.L.Rev. 438, 451. See also Fried v. Bradley, 219 La. 59, 52 So.2d 247.
 

 In Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., supra, the Court affirmed the principle applicable here: *
 

 “The article declares that actions for the nullity or rescission of contracts are prescribed by five years. It has no application to an action to have decreed null a contract that is void on its face.”
 

 A contrary rule, as plaintiffs have noted, would require the owers in such a subdivision to check the public records for release documents at least every five years in order to preserve the building restrictions. The law wisely opposes such a result. We hold, as did the Court of Appeal, that the plea of prescription is without merit.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed.
 

 [1]
 

 . The instrument begins: “We, the undersigned, owners of property fronting on Sena Drive in Ferndale Subdivision Extension. * * * ” The instrument makes no reference to notice, meeting, or voting. It is neither notarized nor witnessed.