376 So.2d 586 (1979)
TALL TIMBERS OWNERS' ASSOCIATION
v.
Mrs. Beulah Bertel, Wife of/and Thomas B. MERRITT.
No. 10307.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
*587 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert B. Bieck, Jr., Roy C. Cheatwood, New Orleans, for plaintiff-appellant.
Terriberry, Carroll, Yancey & Farrell, G. Edward Merritt, New Orleans, for defendants-appellees.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Leonard H. Rosenson, Peter S. Title, New Orleans, Foster & DeSalvo, F. L. DeSalvo, Gretna, Hammett, Leake, Hammett, Hulse & Nelson, Craig R. Nelson, New Orleans, amicus curiae in behalf of appellant, Tall Timbers Owners' Assn.
Before STOULIG, SCHOTT and BEER, JJ.
BEER, Judge.
On February 16, 1973, Tall Timbers Owners' Association sued Mr. and Mrs. Merritt to enforce an alleged restrictive covenant assessing annual maintenance charges against their property in Tall Timbers Subdivision. The recorded act of sale by which the Merritts acquired the property (on July 28, 1969), provides:
"This sale is made and accepted subject to the following: 1. The restrictive covenants established by act before C. A. Cutrone, N.P., dated 19 September 1967, registered COB 683B, folio 192. . ."
Thus, Owners' Association contends that the Merritts assumed certain obligations including the provision for maintenance charges, which states:
"16. TALL TIMBERS MAINTENANCE FUND: Each lot of Tall Timbers Subdivision, Section II, is hereby levied with an annual maintenance charge not to exceed One Hundred Twenty and No/100 ($120.00) Dollars for the purpose of creating a fund hereby designated Tall Timbers Maintenance Fund. Said charge shall accrue with respect to a lot from the date that the improvements constructed thereon are occupied, and upon notice from Tall Timbers Section II Owners Association, shall be payable in two (2) equal installments, semi-annually, in advance, on the first (1st) day of January and first (1st) day of July each year.. . ."
To this claim, the Merritts filed an exception of no right or cause of action, contending that the obligation to pay an annual maintenance charge is a personal obligation which was not expressly assumed and, thus, cannot be enforced against them. Additionally, they contend that if the obligation was a real obligation, in the nature of a building restriction, the two-year prescription provided by LSA-R.S. 9:5622 bars the action. The trial court maintained the exception of no right or cause of action, dismissing the suit. This appeal resulted.
*588 The act creating the restrictive covenants treats all lots in the subdivision uniformly and appears to have been executed and recorded in a manner consistent with orderly subdivision planning. Thus, when the Merritts purchased their property in Tall Timbers Subdivision in 1969, they purchased subject to the prior recorded building restrictions and had, at the very least, constructive notice that the building restrictions in question burdened their property.
Classification of the covenant here involved could include personal obligation, real obligation or building restriction.
A personal action lies against him who has bound himself towards another, personally and independently of the property which he possesses. The jurisprudence is well settled that personal obligations must be expressly assumed.
LSA-C.C. arts. 2010-12 and 2015 recognize real obligations. According to C.C. art. 2010, "when obligations are attached to immovable property, they form the third branch of the first division of obligations of this chapter, and are called real obligations." LeBlanc v. Palmisano, 43 So.2d 263 (Court of Appeal, Orleans, 1949), notes:
"A covenant runs with the land when not only the original parties or their representatives, but each successive owner of the land, will be entitled to its benefit, or be liable, as the case may be, to its obligations. It is so called when either the liability to perform it or the right to take advantage of it passes to the assignee of the land. Real covenants relate to realty and have for their main object some benefit thereto, inuring to the benefit of and becoming binding on subsequent grantees, while personal covenants do not run with the land."
In McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960), our Supreme Court noted that a restriction not to sell, transfer or use the property except for residential purposes, constituted a covenant running with the land, binding upon all subsequent owners. The restriction constituted a real obligation on the part of the grantor in the form of a continuous nonapparent servitude. The court left no doubt that a real obligation was created.
In Town South Estates Homes Ass'n., Inc. v. Walker, 332 So.2d 889 (La.App. 2nd Cir. 1976), a subdivision property owners' association brought action against the purchaser of subdivision lot seeking payment of annual assessment as required by a recorded covenant which provided that the assessment was the personal obligation of the property owner. The court held that the purchaser of the lot was liable for the assessment but did not deal specifically with the question before us on this appeal.
Stipulations in title deeds providing for building restrictions are valid and enforceable where restrictions have been inserted pursuant to subdivision planning devised by ancestor in title to maintain certain building standards and uniformity in the improvements. While building restrictions have been considered a species of predial servitude, they have also been judicially labeled as sui generis or real obligations or covenants running with the land. Fitzwater v. Walker, 281 So.2d 790 (La.App. 3rd Cir. 1973). When differences arise, as to classification, the intention of the party encumbering the property as expressed in the deed must be looked to and consideration must be given to the entire context of the instrument.
According to the instrument in question, "Each lot is hereby levied with an annual maintenance charge . . ." and, as noted in Clause 17, "The foregoing restrictions shall constitute covenants running with the land and shall be binding upon and inure to . . . its successors and assigns.. . ." The proceeds of the fund are alleged to provide maintenance and beautification of the common areas of the subdivision, thereby enhancing the value of the property.
Since the fund was created by juridical act of an ancestor in title and imposes uniform standards on all lots in the subdivision for the benefit of Tall Timbers Subdivision, we conclude that the Owners' Association does have a right and cause of action to *589 seek enforcement of the affirmative obligation described in their petition.
Appellees reurge the prescription exception based upon LSA-R.S. 9:5622. Amici curiae contend, however, that the prescriptive period is ten years. We reach no conclusion at this time with respect to this issue, particularly in view of the fact that the Owners' Association, who has so far only alleged that the assessment is due and unpaid, should have an opportunity, if necessary, to amend in order to set forth any material factual contentions that affect the plea of prescription since that issue has not yet been reached in the trial court.
For the foregoing reasons, the judgment of the district court maintaining the exceptions of no cause and no right of action is reversed, and those exceptions are overruled. The matter is remanded to the district court for further proceedings consistent with this opinion. All parties to this appeal shall bear their own costs.
REVERSED AND REMANDED.